JOHN LINDT, Appellee, v. JOHN LINDER AND R. A. FELTER, Appellants.

**Judgments: RES ADJUDICATA.** Plaintiff brought suit against defendant's lessors to quiet title to certain real estate, in which he demanded an accounting of rents and profits down to the commencement of the suit, and at the same time notified defendants that if they remained on the premises he would claim rent from them from that time. Plaintiff recovered judgment in the original suit, but no judgment for rents and profits was rendered. *Held*, that the judgment in such suit was not *res adjudicata* against plaintiff's claim for use and occupation from defendants for the period succeeding the bringing of the first suit and notice.

**Conveyances: ATTORNEY AND CLIENT:** *Presumption of fraud.* Where an attorney took certain property in settlement of attorney's fees and for loans made by him to his grantor, the conveyance was not presumptively fraudulent and void because of the relation of attorney and client. (No such issue was tendered by the pleadings, and the point arises on exclusion of testimony held to be improper cross-examination and not to tend to prove fraud.—REPORTER.)

**Use and Occupation:** *Nature of use is admissible on value.* In an action for use and occupation, the purpose for which the property is used is a proper matter of inquiry in arriving at the value of the use.

*Appeal from Council Bluffs Superior Court.*—HON. E. E. AYLESWORTH, Judge.

TUESDAY, MAY 20, 1902.

ACTION at law to recover for the use and occupation of certain real estate. Trial to a jury, verdict and judgment for plaintiff, and defendants appeal.—*Affirmed.*

*Edson Rich* and *Harl & McCabe* for appellants.

*W. A. Mynster* for appellee.

DEEMER J.—Some branches of this litigation have heretofore been presented to this court. See *Lindt v. Uihlein,* 109 Iowa, 591; *Same v. Same,* 116 Iowa, —. In the first case, which was commenced September 12, 1896, plaintiff secured a decree quieting his title to the real estate involved in this action. He also asked an accounting for rents and profits down to the time of the commencement of that suit; but this relief seems to have been denied,—at least, not awarded. The last case, reported in 116 Iowa, —, was under the occupying claimants act, in which defendants therein, were again defeated. This action was commenced May 25, 1897, to recover for the use and occupation of the premises from October 20, 1895, but at the trial nothing was claimed for use prior to September 12, 1896. The original case went to decree August 16, 1897. The defendants in the present case denied plaintiff's title, and averred that they became tenants of Uihlein and the brewing company before the institution of the original suit, under a lease which did not expire until after the rendition of the decree in that case; that they were not made parties to that proceeding; that they paid the rental to their landlord down to the date of their eviction, June 20, 1899; that the rents were in issue in the original case, and that the decree therein is *res adjudicata*; and also pleaded the then pending occupying claimants proceedings in abatement of this action. There are something like 23 assignments of

error; but we are only required to notice such as are argued, and of sufficient importance to have place in an opinion.

The trial court instructed that plaintiff was not entitled to anything for use and occupation prior to September 12, 1896, and refused an instruction asked by the defendants to the effect that plaintiff could recover nothing for use and occupation prior to August 16, 1897, the date of the decree in the original case. This is said to be error, because the matter of rents and profits was in issue in the original equity case; that plaintiff could have recovered for use and occupation down to the date of the decree; and that the finding in the original suit is *res adjudicata*. This is the main proposition in the case, and, when settled, will solve most of the errors assigned. The petition in the original suit, which was to quiet title, filed September 12, 1896, asked judgment and decree for the rents and profits of said property. The action was against the Uihlein and the Schlitz Brewing Company, and the rents are specifically referred to in the petition as those accruing prior to September 12, 1896. Linder and Felter were not made parties to that action, and nothing was asked against them. The petition alleged that the defendants therein, Uihlein and the brewing company, were in possession, and were liable for the use and occupation of the premises down to the time of demand upon them therefor, to wit, September 12, 1896. Linder and Felter took possession of the property on August 1, 1896, under a lease from the Schlitz Brewing Company, and held possession of the same down to the time they were evicted under the writ of ouster issued in the original case. It will be observed that the Schlitz Brewing Company had no title to the premises, and no right to lease the same to defendants, and that on plaintiffs' theory defendants are jointly liable with Uihlein and the brewing company for the use and occupation of the prem-

ises.  As neither Linder nor Felter were parties to the original suit, they cannot, under the peculiar facts of this case, plead the decree as an adjudication, unless that decree should be treated as full payment for use and occupation of the premises down to the time of its rendition. Plaintiff is not, of course, entitled to be twice paid for the use of his property, and if he received compensation in the original suit, or is in such position as to be estopped from asserting that he did not, then he cannot recover a second time.  As neither Linder nor Felter were parties to the original suit, they could not be held liable for any judgment which might have been rendered against Uihlein and the brewing company for the use and occupation of the premises; and as a judgment, in order to be *res adjudicata* must be mutual, it follows that plaintiff's failure to recover for use and occupation of the premises after Setember 12, 1896, in his action against Uihlein and the brewing company, cannot be treated as an adjudication binding on these defendants.   It may be that plaintiff in the main suit could not split his causes of action against Uihlein and the brewing company, and bring another action against them for rent accruing after September 12th, and before the termination of the original suit; but, as we have already observed, defendants herein are in no such privity with their lessors as to be permitted to plead the former suit as a bar to recovery for use and occupation after September 12, 1896.   Plaintiff might elect to treat Uihlein and the Schlitz Brewing Company as tenants until September 12, 1896, or at least responsible for the rents and profits, as he evidently did, in his suit to quiet title, and the defendants herein, who were in actual possession under a void lease from the brewing company, as tenants after that date.   Indeed the evidence, without dispute, discloses that this is what the plaintiff did.   The uncontradicted testimony shows that plaintiff notified de-

fendants, Linder and Felter, on September 12, 1896, that he should hold them for the subsequent use of the property. Under this state of facts it is evident that the defendants are liable for the use and occupation of the premises after September 12, 1896. Plaintiff was not bound to treat Uihlein and the brewing company as tenants after the twelfth of September, 1896; and if he did not do so, we are unable to see on what theory defendants herein, who were notified of plaintiff's claim, may insist on his holding them as tenants, as against his wish. It was decided in the main case that Uihlein and the brewing company had no title to the property; and, even if it be conceded that the defendants in this case were in privity with their supposed lessors, they may not complain because plaintiff did not see fit to ask for rent down to the time the original case was decided. Uihlein and the brewing company in fact had no title to the property, and the case is not one for the application of the rule of attornment to a stranger. In order that no misapprehension may arise, we may say that defendants claim nothing for section 4201 of the Code, and it seems to be conceded that defendants are liable for use of the premises. The only question argued is, is the original decree *res adjudicata?*

Plaintiff when on the witness stand was asked regarding the rental value of the premises during the time the defendants occupied them. This was objected to because covering a broader period of time than the issues would warrant. As his answer simply covered the rental value per month there was no error.

Defendants also complain because certain testimony elicited from plaintiff on cross-examination with reference to the value of the property and the consideration he paid for it were stricken out and also because they were not allowed to go into the details of the transaction whereby plaintiff acquired title. The claim now made is that plain-

tiff who is an attorney purchased the property from a Mrs. Pralor who was his client and that the transaction was and is presumptively fraudulent and void because of the relation of attorney and client. There is no pleading tendering such an issue, and the point does not seem to have been made in the trial court. Aside from this the testimony which was stricken would have no tendency to prove the claim. The interrogatories to which objections were sustained were not proper cross-examination and in so far as they tended to establish the point now contended for, they were answered, and no prejudice resulted. Moreover, the evidence tends to show that plaintiff did not purchase the property, but took it in settlement of attorney's fees and of loans made by him to his grantor. The cases cited by defendants with reference to purchases by attorneys of the subject-matter of the litigation from their clients are not in point. A witness was asked as to the rental value of the property, considering the purposes for which it was used by the defendants. It appears that defendants used it for a saloon and for bottling purposes. Surely the rental value of a property depends, to some extent at least, upon the use which is to be made of it. No doubt more is demanded when a building is used for saloon purposes than when it is occupied for a grocery. But whether this is true or not, the character of the business to be carried on has something to do with the rental value, and is to be considered in arriving at the true worth in the market. Moreover, part of the building was used by one of the defendants as a place of residence. The use to which the property was put was, we think, a proper matter of inquiry in arriving at the value of that use. Some other errors are complained of, but they are not of sufficient importance to demand separate consideration.

There is no prejudicial error, and the judgment is AFFIRMED.