# WILLIAM H. GARDNER v. WILLIAM C. J. HERMANN.[1]

December 1, 1911.

Nos. 17,317—(117).

**Answer to telephone call — proof of conversation.**

One who answers a telephone call from the place of business of the person called for, and undertakes to respond as his agent, is presumed to have authority to speak for him in respect to the general business there carried on and conducted, and further evidence of identification of the person responding to the call is not necessary to the admissibility of the conversation thus held.

**Conversation with particular individual.**

The rule is otherwise where it is sought to charge a particular individual with an admission or conversation over the telephone. In such case the individual must be identified.

**Verdict sustained by evidence.**

Evidence *held* sufficient to justify a verdict to the effect that a clerk in defendant's employ, who in his absence answered a telephone call in respect to the ordinary business there carried on, had authority to act for defendant.

[1] Reported in 133 N. W. 558.

[Note]  As to necessity and sufficiency of identification as foundation for admission of conversation or communication by telephone, see note in 6 L.R.A. (N.S.) 1180.

116 M.—11.

**Erroneous charge to jury.**

> Charge of the court construed, and *held* to have erroneously authorized and permitted a verdict for plaintiff, upon the theory of the negligence of his agent, when the action was founded upon a breach of contract.

Action in the district court for Hennepin county to recover $1,500 for breach of an agreement to keep plaintiff's property covered by insurance in that sum in some good and solvent insurance company authorized to do business in Minnesota. The answer admitted that certain store fixtures belonging to plaintiff were destroyed by fire, without negligence on his part, but denied that they were of any greater value than $2,000, and denied the other allegations of the complaint. The case was tried before Steele, J., who, at the close of plaintiff's testimony and again at the close of the case, denied defendant's motion for a directed verdict in favor of defendant, and a jury which returned a verdict in favor of plaintiff for $1,530.25. From an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial, he appealed. Reversed and new trial granted.

*M. H. Boutelle* and *N. H. Chase,* for appellant.

*Frank R. Hubachek* and *George S. Grimes,* for respondent.

BROWN, J.

The facts in this case are substantially as follows: Plaintiff was engaged in the retail millinery business, and defendant was a real-estate, land, and insurance broker, at Minneapolis. For a number of years prior to the transaction involved in this action, defendant had acted as broker in placing considerable amounts of insurance for plaintiff upon his stock and fixtures; in fact, all of plaintiff's insurance had been so placed by defendant, amounting in the aggregate to seventy or more policies in different insurance companies. Defendant's office was supplied with the modern telephone conveniences, by means of which he transacted considerable of his business. Orders for insurance were frequently communicated to him by plaintiff over the telephone, and were uniformly filled, with the exception of the instance involved in this action. It was shown that it usually

required from two to three weeks in procuring or placing such orders. Defendant's office force consisted of himself, Mrs. Grosskopf, who acted as clerk, and a Miss Johnson, as an assistant clerk. The former had been in his employ some seven years, while the latter had served only a few months. Plaintiff did all the telephoning for insurance, and knew the voice of defendant, and of Mrs. Grosskopf, and, when defendant was not personally present to answer his call, his orders were received by some one else—a woman's voice—and were filled in accordance with directions.

Some time in July, 1910, plaintiff called up defendant's office and ordered a policy of insurance for $600 upon his fixtures, and the telephone was answered by a woman's voice and the order accepted. The policy was subsequently delivered, and upon examination found by plaintiff to be upon stock instead of fixtures. Whereupon, and on August 15, 1910, plaintiff called defendant's office by telephone and was answered by a woman's voice, which plaintiff supposed, but did not know, to be the voice of Mrs. Grosskopf. Plaintiff inquired for defendant, and, upon being informed that he was not present, asked if the person answering the call could take his order for insurance. Upon being informed that she could, he stated that the $600 policy recently procured by defendant had been erroneously placed upon stock, when it should have been on fixtures, and directed that it be corrected, and at the same time ordered additional insurance in the sum of $1,500 upon fixtures. To make certain that his order was understood, he had the person taking it repeat it to him, and he again restated it to her. Plaintiff soon after left for New York upon business, and a few days after his return a fire occurred, which destroyed his stock and fixtures. Upon looking up his insurance, he found that the $600 policy had not been changed, and that defendant had neglected to procure the additional insurance of $1,500. The $600 policy remained upon the stock, and was paid in full. He lost, however, the protection intended to be secured by the $1,500 policy then ordered. On the theory that his order for the policy and its acceptance in the manner stated constituted a contract between plaintiff and defendant, this action was brought for its breach. Plaintiff had .

a verdict in the court below, and defendant appealed from an order denying his alternative motion for judgment or a new trial.

1. It is first contended by defendant that the evidence wholly failed to establish a contract, and that therefore the trial court erred in not directing a verdict for defendant at the close of the trial. This contention, if we correctly understand counsel's argument, is founded upon the proposition that the communication by telephone between plaintiff and some unknown person in defendant's place of business established nothing beyond the fact that a conversation was had, and in the absence of further evidence of identification or authority on the part of the person so answering has no probative force, and is wholly insufficient upon which to predicate contract rights.

In this contention we are unable to concur, though it must be conceded that it is not unsupported by authority. Planters v. Western Union, 126 Ga. 621, 55 S. E. 495, 6 L.R.A.(N.S.) 1180; Young v. Seattle, 33 Wash. 225, 74 Pac. 375, 63 L.R.A. 988, 99 Am. St. 947. Those cases lay down the rule that the burden is upon the person holding a telephonic communication with some one at the place of business of another, who answers the call, to establish not only the identity of the person so answering, but also his authority to represent the proprietor of the place of business called up and who is sought to be charged with information thus communicated. But they are not in harmony with the weight of authority upon the question, at least as respects a telephonic conversation carried on by some person at the office or place of business called and with respect to the business there carried on and conducted.

The rule applied by most of the courts where the subject has been under consideration, in situations like that here presented, is tersely stated by the supreme court of South Carolina in this language: "One who answers a telephone call from the place of business of the person called for, and undertakes to respond as the agent, is presumed to speak for him in respect to matters of the general business carried on by such person at that place." Gilliland v. Southern, 85 S. C. 26, 67 S. E. 20, 27 L.R.A.(N.S.) 1106, 137 Am. St. 861.

The rule as thus stated is consistent with the general principles of the law of agency, but it does not apply where a particular individual

is sought to be charged with an admission or conversation over the telephone. In such case identification of the individual must be shown. Barrett v. Magner, 105 Minn. 118, 117 N. W. 245, 127 Am. St. 531. And see authorities collected in 6 L.R.A.(N.S.) 1180, in a note to the Georgia case cited above; General Hospital v. New Haven, 79 Conn. 581, 9 Am. & Eng. An. Cas. 168.

We are cited to no case in which the court has gone beyond the rule as laid down by the South Carolina court, but it is fairly open to question whether apparent authority is not made out in cases of this kind, which precludes the principal as against third persons acting in good faith. Business concerns, by installing a telephone in their places of business to be used in the transaction of affairs there conducted, impliedly invite the public to make use of that medium of communication. It is thereby made an agency for the transaction of business, and there are forcible reasons for the position that persons thus dealing have the right to assume that one answering his telephone call, who asserts a right to speak for his principal or employer, is authorized to do so and to transact the business there conducted. Wolfe v. Missouri Pac. Ry. Co. 97 Mo. 473, 11 S. W. 49, 3 L.R.A. 539, 10 Am. St. 331; 40 Chicago Leg. N. 275; 1 Enc. Law (3d ed.) 959; Buckle v. Probasco, 58 Mo. App. 49; Timpson v. Allen, 7 Misc. 323, 27 N. Y. Supp. 915; Reed v. Burlington, 72 Iowa, 166, 33 N. W. 451, 2 Am. St. 243. It may well be argued that the principal, having adopted that method for the transaction of his business, should be held accountable for the conduct of those who in his absence speak for him, except, of course, where the conversation is carried on with a mere switchboard operator or janitor, with no authority whatever, a fact readily learned. But we are not disposed to take that ground in this particular case. A consideration of the question is not necessary to a full determination of the rights of the parties.

It appears from the record before us that for several years business of the character here involved had been carried on and conducted over the telephone between the parties, that plaintiff had a line of credit with defendant, and that orders for increased insurance thus given, and received at defendant's office either by himself or some

lady clerk, with the exception of this instance, were uniformly filled and carried out by defendant. Plaintiff on this occasion inquired for defendant, and, upon being informed that he was absent, asked if the person speaking had the right to take an order for insurance, and, upon being informed that she had, communicated the same to her, and dismissed the matter in the belief that his order would be filled as like orders had been in the past.

There can be no question on the evidence but that this conversation was had with Miss Johnson, a clerk in defendant's service. The order included a change in the $600 policy and a new one for $1,500. Miss Johnson admitted on the witness stand that she received the order for the change in the first policy, but denied that part having reference to the new one. Only one conversation between plaintiff and defendant's place of business was had at the time upon this subject, and either plaintiff or Miss Johnson is mistaken as to its purport. The jury placed credit with plaintiff.

This witness, as stated, was a clerk in defendant's employ. She was authorized to answer telephone calls, to fill out policies of insurance, and otherwise assist her superior, Mrs. Grosskopf. Defendant offered evidence tending to show that she possessed no authority to make contracts for him; or to accept or receive orders for insurance over the telephone or otherwise. But it also appears that upon this particular occasion she was the sole occupant of defendant's office, and assumed the right to take this particular order. There was also evidence to the effect that, after plaintiff had suffered a loss by fire, defendant admitted that Miss Johnson received the order for the additional insurance, but neglected to report the same, hence the failure of defendant to procure it. Presumptively, within the authorities cited, Miss Johnson was authorized to act for defendant, and though we do not hold the presumption conclusive, as creating apparent authority within the law of agency, we do hold that the evidence, taken as a whole, made the question of her authority one of fact for the jury to determine. The truthfulness of the testimony of defendant respecting restrictions imposed upon her was a matter for the jury, and we discover no reason for interfering with their conclusion.

It follows that the verdict should be sustained, unless the further contention of defendant in reference to the charge to the jury presents reversible error.

2. The action was for a breach of the contract to procure additional insurance, and upon that theory only was plaintiff entitled to prevail. If no contract resulted from the conversation with Miss Johnson, because of a lack of authority on her part to bind defendant, then no recovery could be had. The court charged the jury that if Miss Johnson had no authority to make the contract, but they further found that it was her duty to answer the telephone and communicate to defendant any message or order that was received by her, and she failed and neglected to do so, and because of her failure the additional insurance was not procured, her failure and neglect would be attributable to defendant, and, further, that if damage resulted to plaintiff through the carelessness or negligence of Miss Johnson in not reporting the order to defendant, plaintiff would be entitled to recover such damage.

It is clear that these instructions permitted a recovery by plaintiff if the jury found that the failure of defendant to procure additional insurance was because his clerk was negligent in not communicating the order to him. If Miss Johnson was not authorized to accept the order over the telephone or otherwise, then her attempted acceptance was not binding upon defendant, and no contract resulted therefrom. Nor can it be said that a contractual relation arose between the parties because of her negligence in failing to report the order for defendant's acceptance. The instructions were erroneous, therefore, because they permitted a recovery upon a ground not involved in the pleadings. It is probable that the court simply intended to impress upon the jury the fact that Miss Johnson's neglect in the matter was immaterial, and to confine the recovery to the alleged contract. But that portion of the charge above referred to, and found at folio 201 of the record, might well have been understood by the jury as a distinct theory upon which plaintiff could recover. And as it is impossible from the record to say upon which theory of the case, as presented by the charge, the jury predicated their verdict, there must be a new trial.

Order reversed, and new trial granted.