GRACE GEMRICHER, Appellee, v. GUY GEMRICHER, Appellant.

No. 45489.

NOVEMBER 12, 1941.

Mills, Hewitt & Diltz, for appellee.

Walter F. Maley, for appellant.

SAGER, J.—Appellee charges that appellant struck, beat and abused her and otherwise conducted himself with extreme cruelty. Appellant denies generally. The parties were married on December 10, 1919. Appellee at the time of the trial was thirty-nine; her husband, forty-three years old. No children were born to the marriage. According to appellee, appellant began to abuse her seven months after they were married. After that time, according to her tale, her life seems to have consisted of being slapped and kicked around by her husband to the accompaniment of profane and obscene speech. She had access to appellant's bank account with the privilege of writing checks. This she does not deny but said that every time she wrote a check, appellant gave her a beating. It is a testimonial to her

stamina and courage that she withstood this treatment to the extent of $500 worth of checks; and, that she was not without the power of self-expression is apparent from this admission:

"During the last few years my husband and I, when our tempers got the best of us, both used rather high powered language and expletives against each other."

To all of her story there is not a word of corroboration except that of her mother who testified that she visited their home a few times and heard him curse and swear at appellee. Those who lived in the houses on the farm never saw or heard any of the things of which appellee complains. Among his acquaintances appellant had the reputation of being a conservative and thrifty farmer—a friendly and companionable man.

Without going further into detail it is sufficient to say that all charges are denied except as is to be presently noted; and, since denial is as strong as affirmation, appellee having the burden of proof must fail.

Appellant, with a frankness in striking contrast to the attitude of appellee, admits that on two occasions he slapped his wife. Whether any circumstances would ever justify the slapping of a woman we are not called upon to determine; but appellant excuses himself on the ground that he was provoked beyond the limits of reasonable self-restraint by his wife. He testified, and appellee did not deny, that on the two occasions when he slapped appellee she had called his mother names so foul as would in an earlier day have provoked a fight in barroom or livery stable.

Appellee seems to have regarded her marriage as a venture, not for "better or worse" but for more or less. She sued for a divorce in 1937. As a condition precedent to dismissing that action she demanded a paid-up life insurance policy for $2,000 in the Bankers Life. She testified: ·

"We made a verbal agreement that he would turn over his personal property to me provided I went back home and lived with him. He was to turn over everything to me on the farm as a condition of me going back to live with him as his wife. I insisted on this."

Appellee had already checked out of appellant's account $500. In addition to this he paid $300 in attorney's fees. That Attorney Frank Hallagan may have had some misgivings as to the good faith of appellee's attitude might be suggested by this from the abstract of record:

"Mr. Hallagan told my wife at that time, I am not going to take this away from this boy if you don't go out and do your part."

According to appellee's story, except for a period of two or three weeks after her return, she was subjected constantly to brutalities and beatings. Nevertheless they continued their marital relations up to the night before she left. There was then no complaint. She slipped out the next day without her husband being aware of any intention on her part of going away. She had asked him just before he left that day on a business trip whether he would be back in time for dinner and he said he would. When he came back the wife was gone, so was nearly everything in the house except the furniture.

Appellant argues condonation but this was not pleaded; however it may well serve as a circumstance concerning the mental attitude of this appellee. We purposely omit reference to the cases cited because of the nature of the question involved.

Finding that appellee has wholly failed to sustain the burden imposed on her by law, the decree of the trial court granting her a divorce must be and it is reversed.—Reversed.

MILLER, C. J., and GARFIELD, BLISS, WENNERSTRUM, OLIVER, STIGER, and HALE, JJ., concur.